## No. 15,485.

HANSEN ET AL. *v.* JONES.
(168 P. [2d] 263)

Decided April 15, 1946.

1

Mr. ALBERT L. MOSES, Mr. RALPH C. HORTON, for plaintiffs in error.

Mr. MERLE M. MARSHALL, for defendant in error.

*En Banc.*

MR. CHIEF JUSTICE KNOUS delivered the opinion of the court.

AN action for money had and received. Herein we shall refer to the parties by name or as they appeared

in the trial court, where plaintiffs in error were defendants and the defendant in error was plaintiff.

Plaintiff and his assignor are brothers. Defendant Hansen is their uncle. Hansen was a cattle grower. From time to time in the past, plaintiff and his brother had been given a few head of cattle by relatives, including Hansen. As a matter of convenience this gift stock and their increase were run with the Hansen herd. By way of compensation for such accommodation the boys performed occasional farm labor for Hansen. Plaintiff's animals were branded "reverse N slash 4" and his brother's with a "lazy house top." Defendant bank, of which the third defendant Mr. A. J. West was president, held a chattel mortgage on certain of Hansen's cattle, but by its descriptions such mortgage did not cover cattle bearing either of the foregoing brands. In course, as they matured, certain of the boys' cattle were sold by them or for their account. In the spring of 1942 Hansen consigned a considerable number of livestock to the Alamosa Auction Company for sale. By arrangement all of the proceeds therefrom were transmitted by the auction company to the bank. Included in the cattle sold was a "reverse N slash 4" cow, with a calf by her side, and a cow bearing the "lazy house top" brand. These animals brought $149.00 at the sale. Alleging ownership of the last mentioned animals by himself and his assignor, and the failure of defendants to pay over the sales receipts therefrom, plaintiff brought the instant action as in assumpsit for money had and received. Hansen answered by general denial. The bank and Mr. West upon information and belief, denied the ownership as laid in the complaint; admitted the sale and the receipt of the proceeds in question, and by way of conclusion denied being indebted to plaintiff. In addition, the answer of Mr. West pleaded that a judgment in his favor in a previous action (William Jones v. A. J. West, Alamosa County, No. 1894) was res judicata in the case at bar.

Following a trial to the court the issues generally were found in favor of plaintiff and judgment was entered against defendants for the $149.00—less four percent· sales commission—plus interest. It was uncontradicted in the evidence that at the time of trial the net of the $149.00 item in controversy had not been applied to the mortgage of the bank, but was held therein in Hansen's account subject to the control of Mr. West.

As the primary grounds for reversal counsel for defendants who prosecute this review, say: "The two errors into which the lower court fell and which resulted in its erroneous findings and judgment were: (a) That it regarded proof of the brand upon an animal [by evidence other than a certified copy of a recorded brand] as evidence of the ownership of the animal [folio 209]. (b) That one could not sell all of his cattle without selling the brand."

 ██ Concerning (a), we find nothing whatsoever in the record indicating that the trial court viewed or held as imputed therein. The folio reference given relates to remarks of the judge in the trial of Jones v. West, supra, and not to any finding in the case at bar. Without reliance on the brand, evidence adduced by plaintiff positively identified the "reverse N slash 4" cow and her calf as having been one of plaintiff's animals. Inferentially, also without reference to a brand, other of plaintiff's proof was sufficient to indicate prima facie that the second cow had belonged to his brother. In the deposition of the defendant Hansen, the only testimony introduced by defendant, he conceded that prior to April 23, 1941, plaintiff and his brother, respectively, owned the brands in question as well as any and all livestock bearing such, but claimed that on said date· he had purchased from them all of the cattle they then owned. As confessed by them, the bank and Mr. West were merely stake holders. As neither of defendants offered any proof on the question of ownership of the cattle other than as given by Han-

sen they were bound by his position. Thus the original ownership of the animals involved never was an issue herein, the sole question in factual dispute being whether plaintiff and his brother had lost that ownership by a sale to Hansen. Obviously, when such issue was resolved adversely to defendants, as here transpired, they were in no position to question the insufficiency of the showing of the original ownership upon which they relied as the basis of derived title claimed by Hansen. As received, the evidence of the brands carried by those animals was for their identification, and not to prove ownership. This course was permissible and proper. See, *Chesnut v. People*, 21 Colo. 512, 523, 42 Pac. 656, and *Brooke v. People,* 23 Colo. 375, 48 Pac. 502.

Considering defendants' admissions of plaintiff's ownership, and the latter's prima facie proof thereof extrinsic of the brands carried by the animals, the court was not required to rely upon the informal evidence concerning the brands to adjudicate plaintiff's ownership, and, as we read the record, did not do so.

Defendants' contention (b), "that one could not sell all of his cattle without selling the brand," is equally hypothetical herein, in that it assumes, contrary to the court's findings, that plaintiff and his brother sold all of their cattle to Hansen. While Hansen so testified, this was unequivocally disputed by plaintiff's father, and inferentially by his mother who, although present at the conversation upon which Hansen relies, said she heard no mention of a sale or purchase of the whole herd, but only of a few individual animals. As was mentioned by the trial court, Hansen's statement that he bought *all* of the cattle, was seemingly inconsistent with the fact that checks with which he said the purchase was made, bear specific notations in his handwriting to the effect that they were in payment for only six head. Plaintiff's evidence was that at the time, he and his brother owned a considerably

greater number of cattle. Being so based on conflicting evidence, it is elementary that we may not disturb the court's finding that there was no sale of the two herds. It is equally patent that having so decided, there was no occasion for the trial court to delve academically into the question of whether the bulk sale of all of the cattle of an individual effects a transfer of the brand.

In August, 1942, plaintiff sued defendant A. J. West, individually, for the conversion of the identical cattle involved herein. The case was tried in June, 1943, to the Hon. Joseph H. Thomas, who also presided herein. The judgment was for dismissal. In the decision so ordering, the court expressed that plaintiff had established ownership of the cows, but had failed to prove that Mr. West had converted them. Concerning the latter point the decision stated: "But the evidence is totally lacking in anything which connects the defendant with possession, dominion or control of the cattle or the sale thereof. The defendant had control over the proceeds, the price received at the sale. It may be that there was a conversion of money. If there was a conversion of anything it was of the price and not of the cattle and the plaintiff cannot recover. Let judgment enter dismissing the cause."

The instant action in assumpsit for money had and received was commenced on August 3, 1943. Herein, as has been mentioned above, Mr. West alleged that the judgment in Jones v. West, above mentioned, was res judicata as between him and plaintiff. In support, at the trial herein, counsel for Mr. West introduced the complaint, answer and decision in that case. His plea was denied by the court. We think this ruling must be upheld. Upon the face of the decision in the former case, it would seem that the judgment of dismissal was rendered because of plaintiff's misconception of the remedy available and, in effect, was without prejudice to his right to sue for the proceeds. In such circumstances plaintiff was "entitled to bring the proper pro-

ceeding to enforce his cause of action." 30 Am. Jur., p. 946, §210. If the situation was other than that shown by the record, Mr. West had the burden of establishing such by competent proof (*Grand Valley Irr. Co. v. Fruita Imp. Co.*, 37 Colo. 483, 86 Pac. 324, and *Ornauer v. Penn Mutual Co.*, 52 Colo. 632, 123 Pac. 650), but he made no attempt to do so. Under conditions somewhat analagous, we have held, upon the principle first mentioned, that the dismissal on the merits of a cause of action upon an express contract was not a bar to the institution of a new action upon an implied contract or upon quantum meruit. *Schleier v. Bonella,* 77 Colo. 603, 237 Pac. 1113. See, also, *Wescott v. Bock,* 2 Colo. 335, and *Cupples v. Cupples,* 33 Colo. 449, 80 Pac. 1039.

The judgment is affirmed.