25CA0176 Spectrum v Continental 02-12-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 25CA0176
City and County of Denver District Court No. 21CV30695
Honorable Jon J. Olafson, Judge

Spectrum Retirement Communities, LLC; Anson Operator, LLC; Anthem Operator, LLC; Burr Ridge Operator, LLC; Carmel Operator, LLC; Cary Senior Living, LLC; Cedar Park Operator, LLC; Chandler 2 Operator, LLC; Chandler Operator, LLC; Creve Coeur Operator, LLC; Dougherty Ferry Operator, LLC; Fishers Operator, LLC; Gahanna Operator, LLC; Gilbert Operator, LLC; Green Oaks Operator, LLC; HighPointe Operator, LLC; Hilliard Operator, LLC; Lakeway Operator, LLC; Lakeway Overlook, LLC; Lakeway Townline, LLC; Lincoln Meadows Senior Living, LLC; Lombard Operator, LLC; Lone Mountain Operator, LLC; Mason Operator, LLC; Mesa Operator, LLC; Park Meadows Senior Living, LLC; Peakview Operator, LLC; Peoria Senior Living, LLC; PH Operator, LLC; Pickerington Operator, LLC; Powell 2 Operator, LLC; Reavis St. Holdings, LLC; Reavis St. Operator, LLC; Round Rock Operator, LLC; Santa Fe Operator, LLC; Saxony Operator, LLC; SF Overland Park, LLC; S-K Anson Opportunity II, LLC; S-K Anthem Opportunity I, LLC; S-K Burr Ridge Residential, LLC; S-K Carmel, LLC; S-K Cary, LLC; S-K Cedar Park Opportunity II, LLC; S-K Chandler 2 Opportunity I, LLC; S-K Chandler Owner, LLC; S-K Crestview, LLC; S-K Creve Coeur Owner, LLC; S-K Dougherty Ferry Owner, LLC; S-K Ellisville, LLC; S-K Fishers, LLC; S-K Gahanna, LLC; S-K Gilbert Residential, LLC; S-K Green Oaks, LLC; S-K HighPointe Owner, LLC; S-K Hilliard Owner, LLC; S-K Lombard Owner, LLC; S-K Lone Mountain, LLC; S-K Lone Mountain Owner, LLC; S-K Mason Opportunity II, LLC; S-K Meridian, LLC; S-K Mesa Opportunity II, LLC; S-K Palos Heights Opportunity II, LLC; S-K Peoria, LLC; S-K Pickerington Opportunity I, LLC; S-K Powell 2 Opportunity I, LLC; S-K Powell Owner, LLC; S-K Round Rock Opportunity I, LLC; S-K Santa Fe Opportunity II, LLC; S-K Saxony Opportunity I, LLC; S-K Shawnee, LLC; S-K Smoky Hill Owner, LLC; S-K South Elgin Opportunity III, LLC; S-K Streamwood Owner, LLC; S-K West Chester Opportunity I, LLC; S-K Westerville Opportunity II, LLC; South Elgin Operator, LLC; Spectrum Park Meadows Land, LLC; Spectrum Retirement of Ohio, LLC; SRC of Arizona, LLC; SRC of Colorado, LLC; SRC of Illinois, LLC; SRC of Indiana, LLC; SRC of Kansas, LLC; SRC of Missouri, LLC; SRC of New Mexico, LLC d/b/a Spectrum Retirement of New Mexico; SRC of Texas, LLC d/b/a Spectrum Retirement of Texas; SRC Rigden Farms, LLC; Streamwood Operator, LLC; West Chester Operator, LLC; Westerville Operator, LLC; and WSPT Hickory View Investors V, LLC,

Plaintiffs-Appellants,

v.

Continental Casualty Company,

Defendant-Appellee.

---

ORDER VACATED

Division V
Opinion by JUDGE LIPINSKY
Welling and Tow, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced February 12, 2026

---

Burg Simpson Eldredge Hersh & Jardine, P.C., Michael S. Burg, Holly B. Kammerer, David K. TeSelle, D. Dean Batchelder, Shane C. Fulton, Englewood, Colorado, for Plaintiffs-Appellants

Squire Patton Boggs (US) LLP, Cole A. Wist, David L. Coats, Denver, Colorado; Paul, Weiss, Rifkind, Wharton & Garrison LLP, H. Christopher Boehning, Yahonnes Cleary, David P. Friedman, New York, New York, for Defendant-Appellee

¶ 1      Plaintiffs, Spectrum Retirement Communities, LLC, and its affiliates (collectively, Spectrum), appeal the district court's award of costs to defendant, Continental Casualty Company, after the court granted Continental's dispositive motion.  We vacate the order awarding costs to Continental in light of Spectrum's subsequent partial appellate victory.

## I.     Background

### A.    Spectrum's Property Insurance Policy

¶ 2      Spectrum owns, operates, and manages senior living and memory care communities in Colorado and eight other states. Spectrum purchased a property insurance policy (the policy) from Continental for the coverage period from August 15, 2019, through August 15, 2020.

¶ 3      The COVID-19 pandemic struck during the coverage period.

¶ 4      The policy included coverage for "direct physical loss of or damage" to Spectrum's covered "property and/or interests."  Three policy provisions (the subject provisions) of and a "Health Care Endorsement" (the endorsement) to the policy are relevant to this appeal.

## B.     Procedural History

¶ 5     Spectrum filed suit against Continental in February 2021 after Continental denied Spectrum's claim for coverage of losses at and damages to its properties resulting from the COVID-19 pandemic. Spectrum pleaded claims for breach of contract; statutory delay and denial in violation of sections 10-3-1115 and -1116, C.R.S. 2025; and common law bad faith.

¶ 6     On October 6, 2023, Continental moved for judgment on the pleadings under C.R.C.P. 12(c).  In its motion, Continental relied on recent opinions from the Colorado Supreme Court and the Tenth Circuit Court of Appeals holding that the COVID-19 pandemic did not cause direct physical loss of or damage to property.  *See MJB Motels LLC v. Cnty. of Jefferson Bd. of Equalization*, 2023 CO 26, ¶ 23, 531 P.3d 1000, 1008 (explaining that the pandemic was not "in or related to any real property" for purposes of section 39-1-104(11)(b)(I), C.R.S. 2025, because "COVID-19 did not infect the property itself" (first quoting § 39-1-104(11)(b)(I))); *Sagome, Inc. v. Cincinnati Ins. Co.*, 56 F.4th 931, 935 (10th Cir. 2023) (holding that "COVID-19 does not physically injure or harm property").

2

¶ 7     On November 20, 2023, the court entered an order (the merits order) granting Continental's motion for judgment on the pleadings.

¶ 8     Spectrum appealed the merits order.  A division of this court affirmed the district court's determination that Spectrum had "failed to plead facts that could establish it suffered a direct physical loss" to covered property because, as the district court found, the COVID-19 pandemic had not caused "damage" to Spectrum's covered property.  *Spectrum Ret. Cmtys., LLC v. Cont'l Cas. Co.*, 2025 COA 57, ¶¶ 46, 48-51, 574 P.3d 733, 742 (*cert. granted* Jan. 20, 2026).

¶ 9     The division's decision in the merits appeal was not a total defeat for Spectrum, however.  The division reversed the portion of the merits order that dismissed Spectrum's claim for coverage under the endorsement and remanded the case to the district court for further litigation regarding that claim.  *Id.* at ¶ 62, 574 P.3d at 744.

¶ 10    On January 20, 2026, the Colorado Supreme Court granted Spectrum's petition for writ of certiorari in the merits appeal. Continental did not file a cross-petition.

## C. The Cost Order

¶ 11    Before Spectrum filed its notice of appeal in the merits case, Continental filed a "motion for award of bill of costs as prevailing party" in the district court. The district court granted the motion, in part, and entered an order (the cost order) awarding Continental $992,372.62 in costs.

## D. This Appeal

¶ 12    In this appeal, Spectrum challenges the award of costs to Continental. Among other arguments, Spectrum contends that, because the division remanded the case to the district court for further proceedings to determine whether Spectrum is entitled to coverage under the endorsement, Continental cannot be a prevailing party entitled to recover costs and, for that reason, the cost order is a "nullity."

¶ 13    On December 31, 2025, Spectrum filed a motion for summary disposition or, in the alternative, for a stay pending resolution of the merits appeal. In that motion, Spectrum argued that Continental could no longer claim to be a prevailing party because it did not seek certiorari review of the merits division's ruling in favor of Spectrum on its claims arising under the endorsement.

Continental responded that, because it prevailed on Spectrum's claims under the subject provisions, which have a collective liability limit of $57.5 million, it would remain the prevailing party even if Spectrum eventually won a judgment on its claim under the endorsement, which has a $100,000 per occurrence limit.

## II. Analysis

### A. The Status of the Cost Order Following the Decision in the Merits Appeal

#### 1. Spectrum Preserved Its Argument That the Cost Order Is a Nullity

¶ 14    Continental argues that Spectrum did not preserve this issue before the district court or adequately present this argument to us. We disagree.

¶ 15    We initially note that Spectrum never had an opportunity to present its nullity argument to the district court. Spectrum could not have raised its nullity argument prior to the merits division's announcement of its opinion. Before that decision, Continental had defeated all of Spectrum's claims and was indisputably the prevailing party. But the situation changed when the merits division partially reversed the merits order. The merits division's decision superseded any findings the district court may have made

regarding the prevailing party. The district court, however, lacks jurisdiction to reassess the prevailing party issue until the mandate issues in Spectrum's merits appeal, which cannot occur during the pendency of the proceedings in the supreme court. *See, e.g., Molitor v. Anderson*, 795 P.2d 266, 268 (Colo. 1990) ("Courts universally recognize the general principle that once an appeal is perfected jurisdiction over the case is transferred from the trial court to the appellate court for all essential purposes with regard to the substantive issues that are the subject of the appeal."). Thus, Spectrum could not have presented its nullity argument to the district court. For these reasons, we conclude that Spectrum's argument that the cost order is a nullity is adequately preserved for our review.

¶ 16    Moreover, Spectrum adequately presented its nullity argument in its opening brief. Spectrum argued in its opening brief that "absent action by the Colorado supreme court, because the basis for the cost [order] has been reversed, the cost [order] will be vacated as a nullity" and, in support, cited *Bainbridge, Inc. v. Douglas County Board of Commissioners*, 55 P.3d 271, 273-74 (Colo. App. 2002). Such argument, while cursory, was sufficient to

6

apprise us of Spectrum's reasoning, and Continental responded to the argument in its answer brief.

## 2. Standard of Review

¶ 17 Whether a cost order is a nullity following an appellate court's partial reversal of the underlying judgment is a legal question that we review de novo. *See Perfect Place, LLC v. Semler*, 2018 CO 74, ¶ 39, 426 P.3d 325, 332 ("[W]e review questions of law de novo.").

## B. Continental Is Not Entitled to an Award of Costs at This Stage of the Litigation

¶ 18 A party may seek an award of costs in a civil case "within 21 days of the entry of . . . judgment." C.R.C.P. 121, § 1-22(1). But "if [the] judgment is reversed, the parties are put in the same position they were in before the judgment was rendered." *Sharon v. SCC Pueblo Belmont Operating Co.*, 2019 COA 178, ¶ 17, 467 P.3d 1245, 1251. "[W]here a judgment has been successfully appealed, an award of costs previously entered on that judgment is no longer valid because, upon remand, that judgment no longer exists." *Bainbridge*, 55 P.3d at 274.

¶ 19 *Bainbridge*'s reasoning also applies when an appellate court partially reverses a judgment. *See Rose Confections, Inc. v.*

*Ambrosia Chocolate Co.*, 816 F.2d 381, 396 (8th Cir. 1987) ("Since we have partially reversed the underlying judgment, we reverse the award of attorney[] fees and costs as well."); *Roe v. Roe*, 535 P.3d 274, 293 (Nev. Ct. App. 2023) ("An award of attorney fees and costs is appropriately vacated when a portion of the underlying order is reversed.").

¶ 20    A prevailing party is "one who prevails on a significant issue in the litigation and derives some of the benefits sought by the litigation.  The number of claims upon which a party prevails or the amount awarded for those claims is not determinative." *Archer v. Farmer Bros. Co.*, 90 P.3d 228, 230 (Colo. 2004) (citation omitted).

¶ 21    When a judgment is reversed on appeal, "[t]he identity of the prevailing party is . . . unknown, and only after the stage of the proceedings where a prevailing party can be identified will a court's order awarding costs be valid." *Bainbridge*, 55 P.3d at 274.  The prevailing party analysis focuses on the "*final disposition* of the substantive issues." *Reyher v. State Farm Mut. Auto. Ins. Co.*, 2012 COA 58, ¶ 40, 280 P.3d 64, 72 (emphasis added).  Only at that stage of the case can a court determine "whether a party has derived some of the benefits sought by the litigation." *Id.* at ¶ 38,

280 P.3d at 71. "A determination of whether a party is a prevailing party . . . 'must await resolution' of claims that remain pending and unresolved in the trial court." *Id.* at ¶ 37, 280 P.3d at 71 (quoting *In re Water Rts. of Bd. of Cnty. Comm'rs*, 891 P.2d 981, 984 (Colo. 1995)).

¶ 22    During oral argument, we asked Continental's counsel whether in an analogous situation — when a district court grants a dispositive motion in part and denies it in part — the court may award costs to the moving party. Continental's counsel was unable to provide us with any legal authority for an award of costs at this interim stage of the case. (Under this scenario, the court did not direct the entry of a final judgment as to fewer than all of the claims under C.R.C.P. 54(b), which is also not the situation here.)

¶ 23    Continental may well be correct that the district court may determine that it is the prevailing party after the court adjudicates Spectrum's claim arising under the endorsement. But as of now, the court has not determined whether Continental is still the prevailing party, and we are not in a position to make such a finding. This is particularly true in light of the supreme court's grant of a writ of certiorari in the merits appeal, as we cannot

predict how the court will resolve Spectrum's arguments regarding the subject provisions' scope. "When a case involves many claims, some of which are successful and some of which are not, it is left to the sole discretion of the trial court to determine which party, if any, is the prevailing party and whether costs should be awarded." *Archer*, 90 P.3d at 231.

## III. Disposition

¶ 24 The cost order is vacated. We offer no opinion on the merits of the cost order or Spectrum's challenges to it.

JUDGE WELLING and JUDGE TOW concur.